UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

SYLVIA WILLIAMS, )
)
Plaintiff, )
)
v. ) Civil Case No. 16-1931 (RJL)
)
PARK PLACE INC, *et al.*, )
)
Defendants. )

## MEMORANDUM OPINION

(December 16, 2019) [Dkt. # 29, 31]

FILED
DEC 16 2019
Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

Sylvia Williams brings various common law and federal claims arising from her allegedly unlawful arrest and prosecution after an incident at a nightclub in the District of Columbia. *See* Compl. 5-12 [Dkt. # 1-2]. She seeks to hold Officer Maynor Gonzalez ("Officer Gonzalez") and the District of Columbia ("the District") (collectively, "the District defendants") liable for Officer Gonzalez's actions during and after Williams' arrest. Williams also seeks to hold Park Place, Inc. ("Park Place") and its owner, Marc Barnes ("Barnes") (collectively, "the Park Place defendants") liable for Officer Gonzalez's conduct as well as Barnes' role in her alleged false arrest and malicious prosecution.

Pending before me are the District defendants' and the Park Place defendants' motions for summary judgment. *See* Park Place Mot. for Summ. J. ("Park Place Mot."); District Mot. for Summ. J. ("District Mot.") [Dkt. # 29, 31]. Upon consideration of the briefing, the relevant law, and the entire record, and for the reasons stated below, the Park Place defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in

1

part, and the District of Columbia defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part.

## BACKGROUND

The events giving rise to these claims took place on August 8, 2015, when Williams went to the Park, a restaurant and nightclub in the District of Columbia. Pl.'s Resp. to District Defs.' Statement of Undisputed Facts ("Pl.'s District SOF") ¶ 2 [Dkt. # 36]. Williams and her friend, Kelly Heath, were standing on the third floor near the elevator, while Park Place employees were attempting to move patrons away from the elevator to keep the entrance and adjacent walkway clear. Pl.'s District SOF ¶¶ 2-5. According to the Park Place defendants, Williams refused to move from the walkway area. Park Place Defs.' Statement of Undisputed Material Facts ("Park Place SOF") ¶ 22 [Dkt. # 29-1]. According to Williams, she never refused to leave, but she did take issue with the way Park Place employees were, in her view, rudely moving patrons. Pl.'s District SOF ¶¶ 5, 6.

At some point, Barnes arrived on the third floor and spoke with Williams. Pl.'s District SOF ¶¶ 5, 6. The parties dispute what happened next. According to Barnes, he asked Williams to relocate and, after she refused several times, he asked her to leave the Park. Park Place SOF ¶ 23. Barnes claims that Williams then pushed him in the chest, causing him to move backwards because he was on crutches. Park Place SOF ¶ 24. Williams denies ever pushing Barnes or refusing to leave. Pl.'s Response to Park Place Defs.' Statement of Undisputed Facts ("Pl.'s Park Place SOF") ¶¶ 23-24 [Dkt. # 37-2]; *see also* Pl.'s Opp'n to Park Place Mot. for Summ. J ("Opp'n to Park Place"), Ex. 8 Heath Aff. She stated that she told Barnes one of his employees had pushed her, and Barnes

2

"responded in a rude, nasty way." Opp'n to Park Place, Ex. 6 Williams Dep. Tr. 76:1-3 [Dkt. # 37-1]. At that point, according to both Williams and Heath, they decided to leave. *Id.* at 76:17-19; Opp'n to Park Place, Ex. 8 Heath Aff.

That night, Officer Gonzalez, a District of Columbia Metropolitan police officer, was working reimbursement detail outside the Park. Pl.'s District SOF ¶ 8. Under the reimbursement program, the Metropolitan Police Department ("MPD") assigns police officers to private establishments, like the Park, to provide police service. Park Place SOF ¶¶ 1, 4; Pl.'s Park Place SOF ¶¶ 1, 4, 6. Officers working reimbursement detail are on "full-duty status" and are authorized to take police action, including making arrests, if necessary. *See* Park Place SOF ¶¶ 3, 6, 11, 14; Pl.'s Park Place SOF ¶¶ 3, 6, 11, 14. While on detail, they remain employees of MPD and are paid by the MPD for their time. Pl.'s District SOF ¶¶ 6, 9. They do not receive any training from the private establishments, nor are they paid directly by them. Park Place SOF ¶¶ 7, 9-10; Pl.'s Park Place SOF ¶¶ 7, 9-10. Police officers on detail at the Park remain outside the establishment except in limited circumstances, such as when an altercation is reported. Pl.'s Park Place SOF ¶ 13.

As the incident between Williams and Barnes was occurring, Park Place employees requested that Officer Gonzalez provide assistance. Pl.'s Park Place SOF ¶ 26. According to Officer Gonzalez, when he arrived on the third floor, Barnes told him that Williams had pushed Barnes. District Mot., Ex. 2 Gonzalez Dep. Tr. at 77:1-5 [Dkt. # 31-2]; District Defs.' Statement of Undisputed Facts ("District SOF") ¶ 10 [Dkt. # 31]. Officer Gonzalez also stated that after he began questioning Williams, she pushed him and cursed at him. District SOF ¶10; District Mot., Ex. 2 Gonzalez Tr. at 80:2-18. Williams avers that she

3

never pushed Officer Gonzalez. Park Place SOF ¶ 27; Pl.'s District SOF ¶ 10. Officer Gonzalez, who was in full police uniform, did not arrest Williams at that time. Pl.'s District SOF ¶ 11; District Mot., Ex. 2 Gonzalez Tr. at 114:3-5. Per his account, he instead escorted her out of the Park because it was crowded and loud inside, and he wanted to avoid having to raise his voice to speak to her. District SOF ¶ 12; District Mot., Ex. 2 Gonzalez Tr. at 81:4-9. At this point, Barnes asked Officer Gonzalez to obtain Williams' identification so that Barnes could issue a notice barring her from the Park. Park Place SOF ¶ 30. According to Officer Gonzalez, Williams then "essentially fled the scene," and he pursued her in an attempt to stop her and continue his investigation. Park Place SOF ¶¶ 30-31; District SOF ¶ 12; District Mot., Ex. 2 Gonzalez Tr. 91:9-19. Williams claims that she and Heath were not escorted out by Officer Gonzalez, but instead voluntarily exited the Park. Pl.'s District SOF ¶ 12.[1]

Outside of the Park, Officer Gonzalez followed Williams. Pl.'s District SOF ¶ 13. He stated that he attempted to stop her and that in doing so, grabbed her elbow and told her she was not free to leave. District Mot., Ex. 2 Gonzalez Tr. 96:4-6; 105:8-12 (describing his "control hold" on Williams' arm). Officer Gonzalez testified that Williams began yelling that Officer Gonzalez was hurting her and making references to Freddie Gray. *Id.* at 110:2-10. Officer Gonzalez "keyed" his microphone to record the exchange and called

---

[1] The parties also refer to a video from a Park Place security camera, depicting the third floor of the Park at the time of the incident on August 8, 2015. The video shows Barnes and Williams engaged in an extended discussion to the right of the elevator. *See* Opp'n to Park Place, Ex. 9, Park Place Video, 8/9/2015. The view is obstructed by the photographer, however, at the point when Barnes claims Williams pushed him and when Officer Gonzalez approaches Williams.

4

for additional police assistance. Park Place SOF ¶ 32; District Mot., Ex. 2 Gonzalez Tr. 105:2-6; *see also* Pl.'s Park Place SOF ¶ 32.

According to Williams, she and Heath were approached by police as they were walking to their car, asked a number of questions, and told not to move. Opp'n to Park Place, Ex. 6 Williams' Dep. Tr. at 99:3-101:8. Williams stated the police officers were "evasive," and "Officer Gonzalez was very aggressive." *Id.* at 103:8-104:2. She testified that Officer Gonzalez "went to cuff [her]" without saying why, he was "grabb[ing her] and . . . yanking [her] around," and he was "menacing." *Id.* at 104:3-10. Williams claims that after she said he was hurting her, he "squeez[ed her] arm, pinch[ing her.]" *Id.* at 104:11-22.

A security camera above the sidewalk where Williams was approached and arrested recorded the exchange. *See* District Mot. at 13. That footage, which has no sound, depicts two police officers, one of whom is Officer Gonzalez, approaching Williams and Heath on the sidewalk and speaking with them. *See generally* Opp'n to Park Place, Ex. 9, Bank Video, 8/9/2015. After some discussion, Williams then turned and took a step away from the officers, at which point Officer Gonzalez grabbed her by the arm. *Id.* at 7:06. He put her arms behind her back and placed cuffs on her. *Id.* at 7:16. Officer Gonzalez then stood next to Williams holding her arm for several minutes. *Id.* at 7:32-10:37. During this period, Williams appeared to try to pull away from Officer Gonzalez multiple times, but he continued to hold on to her arm. *Id.*

Williams was arrested and charged for simple assault, assault on a police officer, and unlawful entry. Pl.'s District SOF ¶ 14; Opp'n to Park Place, Ex. 3 at 1. Her criminal

5

case proceeded to trial in the Superior Court of the District of Columbia, at which Barnes testified that he asked Williams to relocate, she refused, and she pushed him in the chest. Opp'n to Park Place, Ex. 2 D.C. Sup. Ct. Transcript of Proceedings at 27:8-11; 28:18-25. During the trial, the Government decided not to further prosecute the case, and the charges against Williams were dismissed. *Id.* at 49:5-6; Opp'n to Park Place, Ex. 3 at 1. Williams subsequently moved to seal her records in that criminal case. Opp'n to Park Place, Ex. 3 at 1. On January 22, 2016, the Superior Court granted the motion and further found by a preponderance of the evidence that Williams "did not commit the offense for which she was arrested." *Id.*

On August 8, 2016, Williams filed a civil complaint in the Superior Court for the District of Columbia against the Park Place and District defendants, seeking compensatory and punitive damages. *See* Compl. On September 29, 2016, the District defendants removed the case to this Court, *see* Notice of Removal [Dkt. #1], and on October 12, 2018, the District defendants and the Park Place defendants moved for summary judgment, *see* District Mot.; Park Place Mot. [Dkt. # 29, 31].[2] Those motions are now fully briefed and ripe for decision.

---

[2] Williams also brought claims against MPD Officer Lawrence Glover as well as Fourth Amendment "custom and policy" claims against the District. *See* Compl. at 8-9, 10-12. According to the District, Williams' counsel represented that Williams is no longer pursuing those claims and will seek their dismissal. *See* District Mot. at 8 n.2. In any event, the District has not pursued summary judgment as to those claims, and I do not address them here.

6

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court "must view the evidence in the light most favorable to [the nonmoving party], draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). "[W]hen a properly supported motion for summary judgment is made," however, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (internal quotation marks omitted). If the nonmovant "fail[s] to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof," there can be "no genuine issue as to any material fact." *Celotex Corp.*, 477 U.S. at 323. And if the nonmoving party presents facts that are contradicted by the record, such that no reasonable jury could believe them, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## DISCUSSION

### I. Williams' Vicarious-Liability Claims Against the Park Place Defendants (Counts IV and VII)

I first address Williams' assault and battery claim and her Fourth Amendment claims against Barnes, which she brings on the theory that Barnes is vicariously liable for Officer Gonzalez's alleged conduct in arresting her. Williams concedes, as she must, that

under D.C. law, a private establishment "is not liable for actions of [a police] officer in carrying out his public duty as a police officer." *Lande v. Menage Ltd. P'ship*, 702 A.2d 1259, 1261 (D.C. 1997); *see* Opp'n to Park Place at 7 (citing *Lande*). Nevertheless, she claims that Barnes is liable here because Officer Gonzalez was *not* carrying out his public duty as a police officer when he arrested her. Opp'n to Park Place at 7-9. Rather, in her view, he was acting as an agent of Barnes. *Id.* at 10-11.

Whether a principal-agent relationship exists in a given situation depends on the particular facts of each case, including any written agreement between the parties. *District of Columbia v. Hampton*, 666 A.2d 30, 38, 39 (D.C. 1995) (internal quotation marks omitted). Courts consider several factors, including: "(1) the selection and engagement of the [agent], (2) the payment of wages, (3) the power to discharge, (4) the power to control the [agent's] conduct, (5) and whether the work is part of the regular business of the employer." *Id.* at 38. The right to control the alleged agent, however, is "the determinative factor." *Id.* at 38-39.

The policies and procedures of the MPD reimbursement detail—which are not genuinely disputed and which govern Officer's Gonzalez's relationship with Barnes and Park Place—demonstrate that Officer Gonzalez was *not* acting as Barnes' agent. Under those policies, MPD, not the private establishments seeking police presence, assigns officers to certain reimbursement details. Park Place Mot., Ex. A at 3 (MPD General Order); *see also* Park Place SOF ¶¶ 1, 4; Pl.'s Park Place SOF ¶¶ 1, 4, 6. Police officers remain on "full duty status" with the MPD at all times and must "[t]ake police action for all incidents observed." *Id.* at 6, 8. The policies specifically contemplate that officers may

8

make arrests while working reimbursement detail, including where an incident begins in the establishment but involves a patron that has since left the premises. *Id.* at 9, 10. MPD officers are also prohibited from working directly for private establishments like the Park. *See id.* at 1; *see also id.* at 15 (Reimbursable Program Agreement) ("[I]f an . . . establishment requests a reimbursable detail, the officers work for MPD on public space, and not for or in [the] establishment"). On their face, those policies do not indicate that Barnes had the "power to control" Gonzalez's conduct. *Hampton*, 666 A.2d at 38. To the contrary, they show that Officer Gonzalez retained his authority to carry out his duties as an MPD police officer while on reimbursement detail.

Williams nevertheless argues that Barnes controlled Officer Gonzalez's conduct in the particular circumstances at issue here. That theory, however, is not borne out by the record. Williams relies on the fact that Barnes requested that Officer Gonzalez obtain Williams' identification. Opp'n to Park Place at 8. But that request does not vitiate Officer Gonzalez's authority to take police action while on reimbursement detail. *See* Park Place Mot., Ex. A at 6, 8. Even assuming Officer Gonzalez pursued Williams solely to obtain her identification, he retained his ability to act and make decisions as a police officer, including detaining Williams after he stopped her. Under Williams' theory, Barnes' request for identification renders all of Officer Gonzalez's actions subsequent to that request outside the scope of his public duty. That, of course, cannot be right. *See Bauldock v. Davco Food, Inc.*, 622 A.2d 28, 34 (D.C. 1993) (recognizing that a police officer employed by a private establishment as a security guard could nonetheless act outside the scope of his employment and make an off-duty arrest of a patron at the establishment).

9

Williams next contends that Officer Gonzalez's own deposition testimony demonstrates that his actions were outside the scope of his public duty. How so? Officer Gonzalez explained that in the past, if a patron refused to provide identification for a barring notice, Officer Gonzalez would then seek guidance from the establishment as to whether it wanted to press charges for the underlying criminal conduct, continue to try and issue a barring notice, or do nothing. *See* Opp'n to Park Place at 9-10; District Mot., Ex. 2 Gonzalez Dep. Tr. at 62:5-15. Williams contends that practice demonstrates Officer Gonzalez is acting as an agent when working reimbursement detail. But his testimony does not come close to supporting Williams' theory. As an initial matter, asking a private entity whether it would like to press charges does not establish that Officer Gonzalez "[wa]s under the *actual control* of [Barnes] to a degree sufficient to make him [Barnes'] agent." *Hampton*, 666 A.2d at 40. And here, there is *no* indication—apart from Williams conclusory assertions—that Barnes commanded Officer Gonzalez to arrest Williams, or that he wanted to press charges against Williams.

Nor is Barnes' "control over Gonzalez . . . inferable" from various statements Barnes made during the incident. Opp'n to Park Place at 10. Williams points to Barnes' testimony at the criminal trial, in which Barnes summarized an exchange he had with Heath at the time of the incident: "I was like she's your friend. Do you understand that this – she's going to go to jail, something's going to happen?" Opp'n to Park Place, Ex. 2 Barnes Tr. at 29:19-21. He further testified that he told Officer Gonzalez that "[he] d[id]n't want her locked up or nothing, [he] just need[ed] her information because [he] want[ed] to ban her so she c[ouldn]'t ever come back . . . ." *Id.* at 30:7-10. To say the least, those

10

statements, even if true, hardly show Barnes was "command[ing]" Officer Gonzalez, or that Officer Gonzalez was under Barnes' control. Opp'n to Park Place at 10. If anything, they indicate that Barnes did *not* direct Officer Gonzalez to arrest Williams. Williams' claim against Barnes for assault and battery does not survive summary judgment.

Williams' related argument with respect to her Section 1983 claim fares no better. She seeks to hold Barnes, a private citizen, liable for constitutional violations on the theory that he conspired with Officer Gonzalez to violate her Fourth Amendment rights. *Id.* at 11. While it may be true that a private entity can be held liable under Section 1983 if it is a co-conspirator with a state actor, *Trazell v. Wilmers*, 975 F. Supp. 2d 133, 142 (D.D.C. 2013), Williams does not—because she cannot—point to *any* evidence in the record of a conspiracy. *See* Opp'n to Park Place at 11-12. Instead, she contends that "[c]ommon sense dictates" Barnes knew Officer Gonzalez would have to "forcibly tak[e] the ID" if Williams refused to provide it. *Id.* at 11-12. Therefore, Williams reasons, the "evidence" is sufficient for a jury to infer that Barnes' request for Williams' identification "included with it an express or implicit command to arrest Ms. Williams on fabricated charges if necessary to complete the underlying objective." *Id.* at 12-13. That is pure supposition, and it does not create a genuine dispute of material fact as to whether Barnes conspired with Officer Gonzalez.

Williams' vicarious liability theory fails on the facts and on the law. Accordingly, I dismiss her assault and battery claim (Count IV) and her Section 1983 claims for excessive force and false arrest (Count VII) as to the Park Place defendants.

## II. Williams' Excessive Force Claim Against Officer Gonzalez (Count VII)

Williams' Section 1983 claim for excessive force similarly fails with respect to Officer Gonzalez. "Law-enforcement officials run afoul of the Fourth Amendment's excessive-force prohibition when they use more force than is objectively 'reasonable' to arrest a suspect." *Hedgpeth v. Rahim*, 213 F. Supp. 3d 211, 224 (D.D.C. 2016) (citing *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985)). In evaluating reasonableness, courts "must balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *United States v. Place*, 462 U.S. 696, 703 (1983). "A defendant's motion for summary judgment on an excessive force claim 'is to be granted unless the excessiveness of the force is so apparent that *no reasonable officer* could have believed in the lawfulness of his actions.'" *Campbell v. District of Columbia*, 245 F. Supp. 3d 78, 89 (D.D.C. 2017) (quoting *Wasserman v. Rodacker*, 557 F.3d 635, 641 (D.C. Cir. 2009)).

Williams does not respond to the District defendants' motion on this score, and it is not entirely clear what specific facts she contends support her claim that Officer Gonzalez used excessive force when arresting her. Williams previously claimed in this litigation that "Defendant Gonzalez was extremely physically aggressive handling [her], including yanking her, gripping her, and pulling her out of her shoes while speaking violently." District Mot. at 12-13 (citing Williams' interrogatory responses). Although there is evidence in the record that Officer Gonzalez used *some* force in arresting Williams, *see* Opp'n to Park Place, Ex. 6 Williams' Dep. Tr. at 104:3-20; Ex. 8 Heath Aff., the video evidence confirms that Williams' excessive force claim fails, *see Scott*, 550 U.S. at 379-

81. It depicts Officer Gonzalez holding Williams' arm while she was in handcuffs, and Williams attempting to walk away from him several times. That is not objectively unreasonable force. *Graham v. Connor*, 490 U.S. 386, 396 (1989) (recognizing that at least some force is permissible to effect an arrest). Accordingly, I dismiss Williams' excessive force claim against Officer Gonzalez.

### III. Williams' Intentional Infliction of Emotional Distress Claim (Count II)

Williams also brings claims against Barnes and Officer Gonzalez for intentional infliction of emotional distress. The tort of intentional infliction of emotional distress requires "(1) extreme and outrageous conduct on the part of the defendant which (2) intentionally or recklessly (3) causes the plaintiff severe emotional distress." *Kotsch v. District of Columbia*, 924 A.2d 1040, 1045 (D.C. 2007) (internal quotation marks omitted). "The requirement of outrageousness is not an easy one to meet." *Drejza v. Vaccaro*, 650 A.2d 1308, 1312 (D.C. 1994) (citation omitted). "[L]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Kotsch*, 924 A.2d at 1045–46 (quoting Restatement (Second) of Torts § 46, cmt. d (1965)).

With respect to Barnes, Williams contends that he acted with the requisite amount of outrageousness by "concoct[ing] the false allegations of assault" and committing perjury at her criminal trial. Opp'n to Park Place at 20. In her view, that conduct is "patently extreme and outrageous." *Id.* at 18. Please! Even assuming Barnes' statements in the criminal case against Williams were false, that conduct does not on its face go "beyond all

13

possible bounds of decency." *See Lyles v. Micenko*, 404 F. Supp. 2d 182, 187 (D.D.C. 2005) ("initiating a complaint with the police . . . , even if false, is not conduct that rises to the level of 'outrageousness' as to be beyond all possible levels of decency and utterly incomprehensible in a civilized society"). Nor are the underlying facts here *remotely* akin to conduct considered outrageous in other cases cited by Williams. *See District of Columbia v. Tulin*, 994 A.2d 788, 800–01 (D.C. 2010) (upholding jury verdict on an intentional infliction of emotional distress claim where an off-duty officer rear-ended the plaintiff, falsely reported that she was in distress, and effectively ordered her subordinate to arrest the plaintiff); *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 985, 995-96 (D.C. Cir. 2014) (permitting IIED claim where defendants provided incriminating reports to the police officer investigating an assault but withheld exculpatory reports).

Williams points to a D.C. Court of Appeals case reversing a directed verdict on the plaintiff's intentional infliction of emotional distress claim. *Carter v. Hahn*, 821 A.2d 890, 891 (D.C. 2003). In that case, the plaintiff sued a storeowner for making false statements to a police officer during a criminal investigation, which ultimately led to the plaintiff's arrest for fraudulently cashing a voided check. *Id.* at 891-92. The Court of Appeals remanded the intentional infliction of emotional distress claim for a new trial, concluding that "reasonable jurors could find [the defendant] intentionally and recklessly lied [to law enforcement] about [the plaintiff's] theft." *Id.* at 893. Williams argues her claim must likewise proceed. Unfortunately for Williams, that is not so.

In *Hahn*, the D.C. Court of Appeals proceeded on a very different record: the defendant dramatically changed his story during the investigation, ultimately claiming he

14

knew the plaintiff "very well" and had observed her cash the check at his store, only to be later unable to identify her in a line-up and recant his claims. *Id.* Based on those facts, the D.C. Court of Appeals determined a reasonable jury could conclude the defendant's conduct was "sufficiently outrageous" to warrant the recovery of damages for intentional infliction of emotional distress. Williams cannot point to similar evidence here.[3] Instead, she refers to Barnes' claims that Williams pushed him on the third floor of the Park and refused to relocate, statements he repeated at her criminal trial. That does not rise to the "sufficiently outrageous" conduct the court considered adequate in *Hahn*. And Williams' contention that "Gonzalez and Barnes agreed together to concoct false allegations of assault" finds no support in the record. *See supra* at 11. Williams thus fails to show a genuine dispute of material fact with respect to this claim.

Williams intentional infliction claim against Officer Gonzalez is even weaker. She offers *no* evidence that Officer Gonzalez made false statements, or that he conspired with Barnes to fabricate false narratives.[4] Other courts have permitted intentional infliction of

---

[3] Williams contends that Barnes similarly "recant[ed]" his claims at the criminal trial. Opp'n to Park Place at 4. That contention is belied by the record. The transcript from Williams' criminal trial reveals that Barnes testified that Williams refused to relocate and pushed him. Opp'n to Park Place, Ex. 2 D.C. Sup. Ct. Transcript of Proceedings at 26:21-27:11; 28:18-25. When describing the force of Williams' push, Barnes stated: "I wasn't hurt in any way by her pushing me. It would've been no more of a push than me walking through the crowd." *Id.* at 37:16-18. Contrary to Williams' representations in her summary judgment briefing, Barnes was not describing "two different versions of the alleged assault," one being a push and the other being an "inadvertent and unintentional attempt to move through a crowded space." Opp'n to Park Place at 15. He was explaining how forceful the push was. And although Barnes later expressed some uncertainty as to whether Williams pushed *Officer Gonzalez* or made a motion a towards him, Opp'n to Park Place, Ex. 2 at 41:7-10, he did not recant his claim that Williams pushed *him*.

[4] Nor does she argue that Officer Gonzalez is liable for intentional infliction of emotional distress because his use of force was unreasonable. *See Harris v. U.S. Dep't of Veterans Affairs*, 776 F.3d 907, 917 (D.C. Cir. 2015) (recognizing that "a serious case of excessive force" can constitute

emotional distress claims to proceed against law enforcement officers when there is evidence the officer withheld exculpatory evidence or engaged in evidence tampering. *See Kowalevicz v. United States*, 302 F. Supp. 3d 68, 77 (D.D.C. 2018) (describing cases). Williams points to no comparable evidence here.

For those reasons, summary judgment is warranted as to Williams' intentional infliction claim against Barnes and Gonzalez.

### IV. Williams' Remaining Claims

Williams remaining claims include: common law false arrest and malicious prosecution claims against Officer Gonzalez and Barnes (Counts I and III), a Section 1983 false arrest claim against Officer Gonzalez (Count VII), and an assault and battery claim against the District defendants (Count IV). Those claims all turn on whether Officer Gonzalez had probable cause to arrest Williams. *See Scott v. District of Columbia*, 101 F.3d 748, 754 (D.C. Cir. 1996) (noting that constitutional and common law false arrest claims "turn on the issue of whether the arresting officer had probable cause"); *Blakeney v. O'Donnell*, 117 F. Supp. 3d 6, 19 (lack of probable cause an element of malicious prosecution); *District of Columbia v. Minor*, 740 A.2d 523, 531 (D.C. 1999) (probable cause defeats assault and battery claim).

"The issue of probable cause . . . is a mixed question of law and fact that the trial court should ordinarily leave to the jury. Only where the facts are undisputed or clearly

---

outrageous behavior sufficient for an IIED claim). In any event, that claim would similarly fail because I have already concluded the force employed by Officer Gonzalez was not unreasonable. *See Stevens v. Stover*, 727 F. Supp. 668, 672-73 (D.D.C. 1990).

16

established does probable cause become a question of law for the court." *Amobi v. D.C. Dep't of Corr.*, 755 F.3d 980, 990 (D.C. Cir. 2014) (internal quotation marks and citation omitted). As described in more detail above, the parties tell very different stories regarding the events culminating in Williams' arrest. *See supra* at 2-4. Williams claims she never assaulted either Barnes or Gonzalez, and she also denies ever refusing to leave the premises. She further disputes that she fled the scene. Heath's statement corroborates that narrative. Meanwhile, Officer Gonzalez contends that he was told Williams pushed Barnes and that Williams pushed him. He reports that Williams fled the Park and that she was behaving belligerently when he pursued and approached her. Those divergent accounts create disputed facts as to whether Officer Gonzalez had probable cause to arrest Williams.

To the extent the Park Place defendants argue that they are not liable because Barnes did not control Officer Gonzalez, that argument is unavailing with respect to Williams' false arrest and malicious prosecution claims. Under D.C. law, "[l]iability is incurred for the procuring of a false arrest and imprisonment if by acts or words, one directs, requests, invites or encourages the unlawful detention of another." *Smith v. District of Columbia*, 399 A.2d 213, 218 (D.C. 1979). Although "accus[ing] a person of committing a crime . . . is not enough to sustain a claim of false arrest so long as the decision whether to make the arrest remains with the police officer, . . . the weight of authority holds that an informer who knowingly gives false information to a police officer necessarily interferes with the intelligent exercise of the officer's independent judgment and discretion and thereby becomes liable for a false arrest that later occurs." *Amobi*, 755 F.3d at 990–91 (internal quotation marks and citations omitted). Similarly, "[a] malicious prosecution

claim is sustained where the proceeding is induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith." *Id.* at 992 (internal quotation marks omitted). "[A]ppearing in court[,] testifying[,] and keeping the prosecution alive creates a genuine issue of dispute as to whether a defendant continued a malicious prosecution." *Id.* (internal quotation marks omitted). And although the Park Place defendants contend there is no evidence of malice, our Circuit Court has concluded "it is axiomatic that malice may be presumed from the lack of probable cause." *Id.* at 993.

Here, the parties dispute whether Officer Gonzalez had probable cause and whether Barnes knowingly provided Officer Gonzalez with false information prior to Officer Gonzalez's arrest of Williams. Accordingly, a genuine dispute of material fact remains as to Williams' common law false arrest claim. And even assuming Barnes did not initiate the criminal prosecution against Williams, he testified at her criminal trial, thereby creating a "genuine issue" under D.C. law as to whether Barnes "continued a malicious prosecution." *Id.* at 992. Williams' malicious prosecution claim against Barnes also survives.

For the reasons stated above, I deny summary judgment as to Williams' malicious prosecution and false arrest claims against Barnes and Officer Gonzalez (Counts I and III), her assault and battery claim against the District defendants (Count IV), and her Section 1983 false arrest claim against Officer Gonzalez (Count VII).

## CONCLUSION

For the foregoing reasons, the Park Place defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part, and the District of Columbia defendants' motion for summary judgment is **GRANTED** in part and **DENIED** in part. A separate order consistent with this decision accompanies this Memorandum Opinion.

RICHARD J. LEON
United States District Judge